## 67664. MERCER v. THE STATE.

DEEN, Presiding Judge.
The appellant, Raymond Mercer, Jr., was convicted of burglary, for which he received a sentence of six years imprisonment followed by fourteen years probation. This appeal followed.

At approximately 6:15 a.m. on October 4, 1982, as he approached an entrance to the Albany Mall to unlock it before the maintenance personnel arrived to work, Ferrell Williams, the mall maintenance supervisor, observed a police patrol car parked in a loading dock area. Upon entering the mall area, he discovered the maintenance office door unlocked and the lights on. As he began his rounds, he noticed a uniformed police officer in the mall office, which was adjacent to the maintenance office. He was unable to see the officer's face, because the officer immediately hid in the shadows, but he generally described the officer as a white male, approximately five feet nine inches tall, and heavy set (as was the appellant). Williams chose not to confront the officer at that time, but continued his rounds and approximately 12-13 minutes later contacted the police to report the

suspected burglary.

Shortly after 7:00 a.m. other police officers arrived in response to the call, and the appellant himself appeared at the scene during the initial investigation. The investigation revealed that only two walkie talkie radios and battery chargers (valued at over $2,000) had been taken from the mall office. The office had been entered through the ceiling in its conference room. A stairway in the adjoining maintenance office led to the loft area of the ceiling over the conference room. One ceiling tile had been removed, and a $2 \times 4$ board approximately ten feet long had been lowered through that opening to the floor. The ceiling area and the mall office were dusted for latent fingerprints, and a total of 22 prints were found on the removed ceiling tile, the ceiling tile channelling, and a fluorescent light bulb. Five of those fingerprints were those of the appellant.

After his fingerprints were identified, the appellant explained that when he had appeared at the scene of the burglary, he had inspected the ceiling loft area to see if he could find any evidence in aid of the investigation, and that he had stumbled; to prevent falling through the ceiling he remembered grabbing a styrofoam bell and perhaps the wall but he did not know what else he may have touched. He further explained that he had not mentioned the incident at the time for fear of being chastised for messing up the crime scene. The police officer who identified the appellant's fingerprints, and who qualified as an expert on fingerprint comparison, however, opined that the appellant's fingerprints could not have been impressed on the ceiling tile, channelling, and fluorescent bulb while grabbing those objects to prevent a fall.

Other circumstantial evidence adduced against the appellant included the fact that the appellant collected radios, and the appellant's knowledge that the police officer, normally responsible for the patrol beat in which the Albany Mall was located, was getting off duty two hours early at 6:00 a.m. (The appellant actually had been assigned the duty of covering this beat for the remainder of the shift, but it was in dispute as to whether the appellant had been officially notified of the assignment.) The evidence also showed that at approximately 6:20 a.m., the appellant's supervising sergeant called the appellant via radio to schedule a rendezvous at a department store parking lot and that the two did meet there for a few minutes at approximately 6:35 a.m.

On appeal, Mercer contends that the evidence, and primarily the fingerprint evidence, was insufficient to support the conviction; that the trial court's instruction to the jury on circumstantial evidence was incomplete and misleading; that the trial court erred in not instructing the jury that the state had the burden of proving that

the fingerprints could only have been left on the scene during the commission of the crime; that a mistrial notwithstanding the verdict should have been declared upon the discovery of some verbal contact between the bailiff and a juror after the jury had begun its deliberations; that the trial court erred in restricting cross-examination of one witness; that the trial court erred in not striking the testimony of the fingerprint expert witness because the state failed to comply with the defense's timely, statutory request for scientific reports; and that the trial court erred in disallowing defense counsel to talk with a state's witness because the rule of sequestration had been invoked. *Held:*

1. To sustain a conviction which is based solely on fingerprint evidence, "the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed, under such circumstances that they could only have been impressed at the time when the crime was committed." *Anthony v. State,* 85 Ga. App. 119, 121 (68 SE2d 150) (1951); *Jeffares v. State,* 162 Ga. App. 36 (290 SE2d 123) (1982); *Barnett v. State,* 153 Ga. App. 430 (265 SE2d 348) (1980). Where there is additional circumstantial evidence, however, a conviction is warranted if the proved facts are consistent with the hypothesis of guilty and exclude every other reasonable hypothesis save that of guilt. OCGA § 24-4-6 (Code Ann. § 38-109); *Vaughn v. State,* 136 Ga. App. 54 (220 SE2d 66) (1975); *Barnett v. State,* supra.

In this case, the various circumstances adduced in addition to the fingerprint evidence included: the burglarized premises were located in the appellant's temporarily assigned patrol beat; the appellant was on duty at the time of the burglary; one witness observed a patrol car in the mall parking lot and a uniformed officer in the burglarized premises; and the appellant collected radios. The appellant accounted for the presence of his fingerprints on the bulb, ceiling tile, and ceiling channelling by explaining that he had stumbled in the loft area and evidently had touched those items to break his fall. The state's fingerprint expert, however, did not believe that the prints could have been impressed in the act of stumbling or falling. The appellant's explanation having thus been contradicted, we find the fingerprint evidence, along with the other circumstantial evidence, sufficient to exclude every other reasonable hypothesis save that of the appellant's guilt. See *Jeffares v. State,* supra.

In a related enumeration of error, the appellant contends that the trial court should have instructed the jury that the state had the burden of proving that the appellant's fingerprints could only have been left on the objects during the commission of the burglary. Such an instruction, however, would have been necessary if the conviction

was based solely on the fingerprint evidence, but it is inappropriate where other evidence of guilt is adduced. *Paxton v. State,* 159 Ga. App. 175 (282 SE2d 912) (1981); cf. *Vaughn v. State,* supra.

2. The appellant also contends that the trial court erred in failing to charge, even without a request, that where the evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the defendant should be acquitted. Even though a defendant in a criminal case is exempt from the strict requirements imposed upon litigants in civil cases to preserve an issue on the giving of or failure to give a jury charge, this does not relieve the criminal defendant from requesting instructions "except in those circumstances where the ommission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence." *Spear v. State,* 230 Ga. 74, 75 (195 SE2d 397) (1973); *Aldridge v. State,* 236 Ga. 773, 776 (225 SE2d 421) (1976); *Yeargin v. State,* 164 Ga. App. 835 (298 SE2d 606) (1982). The instant case does not appear to fall within that "clearly harmful" category.

In contending that the trial court should have given the "two theories" charge, the appellant relies upon *Fleming v. State,* 137 Ga. App. 805 (224 SE2d 792) (1976) and *Nolen v. State,* 124 Ga. App. 593 (184 SE2d 674) (1971). *Fleming,* however, does not actually address the issue of whether failure to give such a charge constitutes reversible error, and *Nolen* discusses the "two theories" proposition in reviewing the sufficiency of the evidence to sustain a conviction. We note further that this court in *Nolen,* and subsequent cases, actually discredited this notorious charge. See *Griffis v. State,* 163 Ga. App. 491 (295 SE2d 197) (1982).

It has been held, however, that "where the guilt of a defendant depends wholly upon circumstantial evidence, it is error not to instruct the jury that the defendant should be acquitted unless the hypothesis of his guilt is more reasonable than any other hypothesis which can be drawn from the circumstances . . ." *Middleton v. State,* 7 Ga. App. 1, 3 (66 SE 22) (1909); accord, *Riley v. State,* 1 Ga. App. 651 (57 SE 1031) (1907). This does not create an absurd rule that a jury should be instructed to acquit a defendant upon the latter's presentation of any theory which is consistent with innocence; the instruction is invoked by a reasonable hypothesis of innocence. *Golson v. State,* 130 Ga. App. 577 (203 SE2d 917) (1974).

The crucial factual issue in this case concerned the fingerprints found at the scene of the burglary, and the appellant's explanation, if accepted, of how his fingerprints got on the objects presented a reasonable theory of innocence. The "two theories" charge was thus authorized by the evidence, and the trial court could have given the

charge. Nevertheless, we must conclude that the omission was harmless error in this case. Resolution of the crucial factual issue actually was determinative both of whether the evidence presented a reasonable theory of innocence, and of whether the circumstantial evidence of guilt excluded all other reasonable hypotheses save that of guilt. In short, in this case the "two theories" charge was unnecessary, because the trial court did instruct the jury on the standard requirement that the hypothesis of guilt had to exclude all other reasonable hypotheses, and the conviction was warranted only upon the jury's acceptance of the state's fingerprint expert testimony to the exclusion of the appellant's explanation.

3. The appellant also contends that the trial court erred in restricting defense counsel's cross-examination of the state's witness who had observed the police patrol car and the uniformed police officer at the mall. The trial court, on the grounds of immateriality and irrelevance, did not allow defense counsel to ask this witness about the circumstances of the recent termination of his employment as the mall maintenance supervisor and about where his wife presently resided.

The scope of cross-examination lies within the trial court's discretion, which, absent abuse, will not be disturbed on review. *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980). Questions which are immaterial to the issue(s) in the case are properly excluded. *Stone v. State,* 250 Ga. 718 (300 SE2d 500) (1983); *Moore v. State,* 221 Ga. 636 (146 SE2d 895) (1966). Counsel for the appellant could only speculate that the witness's answers to the questions would serve to impeach the witness, and we find no abuse of discretion in the trial court's refusal to allow such immaterial questions with merely speculative relevance.

4. The appellant next contends that the trial court should have ordered stricken the testimony of the state's fingerprint expert because of the state's failure to produce scientific reports, for which counsel for appellant had made a timely, statutory request, which formed the basis of the witness's testimony. In addition to the witness's testimony, the specific items to which the appellant's counsel objected included a chart enlargement of the fingerprints (which the witness had prepared for trial to aid the jury in understanding the fingerprint comparison) and the rolled prints themselves. It was undisputed that the state did provide appellant's counsel with a copy of the expert's report which stated the results and conclusions of the fingerprint comparison, and the witness had allowed that counsel to examine his file.

OCGA § 17-7-211 (Code Ann. § 27-1303) gives a defendant a right to copies of written scientific reports which will be introduced in

evidence, upon the defendant's timely, written request for such. The appellant's purported request for fingerprint scientific reports was included in a Brady motion, rather than in a separate motion, and failed either to refer specifically to OCGA § 17-7-211 (Code Ann. § 27-1303) or to make it clear that such scientific reports, whether inculpatory or exculpatory, should be furnished prior to the ten day limit. The Supreme Court has recently held that manner of request procedurally defective so as not to subject scientific reports or related testimony to suppression under the statute. *State v. Meminger,* 249 Ga. 561 (292 SE2d 681) (1982); *State v. Madigan,* 249 Ga. 571 (292 SE2d 406) (1982). The testimony of the fingerprint expert witness and any scientific reports thus would not have been properly excluded pursuant to OCGA § 17-7-211 (Code Ann. § 27-1303). Moreover, the chart enlargement was undiscoverable work product, *Holbrook v. State,* 162 Ga. App. 400 (291 SE2d 729) (1982), and OCGA § 17-7-211 (Code Ann. § 27-1303) certainly does not require the state to produce the actual physical evidence upon which the purported scientific report (which was produced) was based.

5. The trial court disallowed the defense counsel to interview the state's witnesses after the state had presented its case, because the rule of sequestration had been invoked. We find no error in this prohibition.

The trial court has discretion in disallowing or permitting, upon request, counsel for one of the parties an opportunity to interview a sequestered witness in the case for limited purposes, and that discretion will not be controlled unless abused. *Smith v. State,* 244 Ga. 814 (262 SE2d 116) (1979). In the instant case, defense counsel had at least three months prior to the trial to interview the state's witnesses, and all of the witnesses had already been examined by the state and cross-examined by defense counsel when the permission to interview was sought. Under these circumstances, the trial court did not abuse its discretion by adhering to the rule and disallowing the interview.

6. The appellant also contends that an improper communication between the bailiff and a juror, after the jury had begun its deliberations, requires reversal of the conviction. Following the publishing of the verdict, defense counsel was informed of the communication between the bailiff and one juror, and counsel immediately requested an evidentiary hearing on the matter. During the hearing, which was held the day following the trial, defense counsel presented the testimony of the bailiff and moved for mistrial notwithstanding the verdict. The state's participation in the hearing consisted of the district attorney's remark: "Your Honor, I am not involved in this."

The bailiff testified that during the jury deliberations, one juror, whom he believed was the foreman, asked him if the jury could have a portion of a witness's testimony repeated, and that he had told the juror that the jury "would have to go with what they had." The bailiff also asked if the juror would like to see the judge, but the juror declined.

A bailiff is to make no communication to a jury and is not to allow any other communication with them, except by leave of court. OCGA § 15-12-140 (Code Ann. § 59-717); *Battle v. State,* 234 Ga. 637 (217 SE2d 255) (1975). "[W]here a communication from the bailiff to the jury is shown, the burden is on the state to rebut by proof the presumption of harm." *Id.* at 639; accord, *Wellmaker v. State,* 124 Ga. App. 37 (183 SE2d 62) (1971). In this case, the appellant's counsel proved the improper communication, and the state did absolutely nothing to rebut by proof the presumed harm. Accordingly, the trial court erred in not granting a new trial on that basis.

*Judgment reversed. McMurray, C. J., and Sognier, J., concur.*

DECIDED FEBRUARY 2, 1984.

*W. Emory Walters, Cheryle T. Bryan,* for appellant.
*Hobart M. Hind, District Attorney, Britt R. Priddy, John W. Hogg, Assistant District Attorneys,* for appellee.